UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRYON PARFFREY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-269 |
| | § | |
| DEUTSCHE BANK NATIONAL TRUST | § | |
| COMPANY, AS TRUSTEE FOR ARGENT | § | |
| SECURITIES INC., ASSET-BACKED PASS- | § | |
| THROUGH CERTIFICATES, SERIES 2005- | § | |
| W2, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

Pending before the Court are the plaintiffs', Bryon Parffrey ("B. Parffrey") and Angeline Parffrey ("A. Parffrey") (collectively, the "plaintiffs"), motion for summary judgment (Dkt. No. 26) and the defendants', Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-W2 ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, the "defendants"), response in opposition thereto.  (Dkt. No. 28).  Also, before the Court are the defendants' motion for summary judgment (Dkt. No. 27) and the plaintiffs' response in opposition thereto.  (Dkt. No. 29).  After having carefully considered the motions, responses, the record and the applicable law, the Court determines that the defendants' motion for summary judgment should be **GRANTED** and the plaintiffs' motion for summary judgment should be **DENIED**.

## II.    FACTUAL BACKGROUND

On July 12, 2005, B. Parffrey obtained a home equity mortgage loan from Argent Mortgage Company, LLC ("Argent Mortgage") in the amount of $560,000.00, pursuant to a Texas Home Equity Adjustable Rate Note (the "Note").  (*See* Dkt. No. 27, Ex. A, Ocwen Aff. at ¶ 6; Ex. A.1.).  Simultaneously therewith, B. Parffrey and A. Parffrey, as his spouse, executed a Texas Home Equity Security Instrument (First Lien) (the "Security Instrument") granting Argent Mortgage, as lender, a lien on their residential property located at 2610 Tudor Manor, Houston, Texas 77082 (the "Property").  (*Id.*, Ex. A.2.).  The Security Instrument expressly provides that Argent Mortgage, as lender, has the right to exercise any and all rights of interests granted by the borrowers and authorizes it to foreclose and sell the property and/or to take any action required. (*Id.*).

Prior to closing on July 11, 2005, B. Parffrey signed a copy of the U.S. Department of Housing and Urban Development ("HUD") settlement statement, providing an itemized disclosure of all actual fees, and other charges that would be charged the following day at closing.  (*Id.*, Ex. A.3.).  At closing, the plaintiffs executed a Texas Home Equity Affidavit and Agreement (First Lien) (the "Home Equity Affidavit"), wherein they both acknowledged that they had received the HUD disclosure statement the day prior to closing and that all requirements set forth in section 50(a)(6), article XVI of the Texas Constitution had been satisfied.  (*Id.*, Ex. A.5; *see also* Ex. C.).  Specifically, they each warranted and represented under oath, before a notary, the following:

> The Note and Security Instrument have not been signed before one business day after the date that the owner of the Property received a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing or a bona fide emergency or other good cause exists and the owner of the Property hereby consents to the Lender providing or modifying such final itemized disclosure on the date of the signing of the Note and Security

Instrument and execution of this Texas Home Equity Affidavit and Agreement
is deemed evidence of such consent.

(*Id.*)

In April of 2006, B. Parffrey fell behind on his payment obligations under the Note. (*See* Dkt. No. 27, Ex. A, Ocwen Aff. at ¶ 8.). He has remained in default of his payment obligations under the Note. (*Id.*). In fact, the last payment received from him was in January of 2011. (*Id.*). His payment obligations under the Note remain due and owing for the month of February 2011 and each subsequent month thereafter. (*Id.*). Nonetheless, despite his failure to render such payment, the plaintiffs have continued to occupy the Property. (*Id.*).

On or about July 21, 2008, Argent Mortgage assigned its rights and interest in the Security Instrument to Deutsche Bank National Trust Company, as Trustee, in trust for the registered holders of Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-W2. (*See* Dkt. No. 27, Ex. A.6).

Notices of the default were sent to the plaintiffs on April 7, 2011. (*Id.*, Ex. A, Ocwen Aff. at ¶ 9; Exs. A.6; C.). On September 7, 2011, a notice of acceleration was sent to the plaintiffs. (*Id.*). On September 20, 2011, the Note's prior servicer filed an application for a Rule 736 order permitting foreclosure of the Note. (*Id.*). The plaintiffs, in response, commenced a lawsuit against Deutsche Bank and the then-servicer alleging a myriad of claims, which were subsequently dismissed on the merits. (*Id.*, Ex. F.)

On March 11, 2013, Ocwen began servicing the Note. (*Id.*, Ex. A, Ocwen Aff. at ¶ 7.). On or about April 7, 2014, Ocwen sent the plaintiffs a new, properly addressed, notice of default. (*Id.*, Ex. A, Ocwen Aff. at ¶ 11; Exs. A.7, D.). This new notice of default requested only the amount overdue under the Note, not the entire balance. (*Id.*). A new, properly addressed, notice of acceleration, dated May 12, 2014, was also sent to the plaintiffs. (*Id.*).

On December 29, 2016, the plaintiffs filed the instant lawsuit to once again stymie foreclosure efforts with respect to the Property. (Dkt. No. 1). On January 27, 2017, the defendants timely removed the action to this Court, on the basis of diversity jurisdiction. *Id.* The parties have now filed cross-motions for summary judgment.

## III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not

satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52, (1986)).

## IV.    ANALYSIS AND DISCUSSION

### A.    The Plaintiffs' Breach of Contract Claim

As a threshold matter, the plaintiffs contend that the Security Instrument, pursuant to its terms, was required to "conform strictly to [the] provisions of the Texas Constitution applicable to Extension of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution." (Dkt. No. 1, Ex. A-3, ¶ 24.).  2009)).  More specifically, the plaintiffs allege that the Security Instrument held by the defendants is invalid or void because the loan failed to comply with the requirements set forth in § 50(a)(6)(M)(ii).   Article XVI, § 50(a)(6)(M)(ii) of the Texas Constitution provides, in pertinent part, that an extension of credit may not be closed before:

> one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing.

Tex. Const. art. XVI, § 50(a)(6)(M)(ii).

In this case, it remains undisputed that B. Parffrey, one business day prior to closing, received and returned an executed copy of the HUD disclosure statement detailing the "itemized disclosure of actual fees, points, interest, costs, and charges" to be assessed at the closing.  (*See* Dkt. No. 27, Ex. A.3).  In addition, at the closing held on July 12, 2005, B. Parffrey and A. Parffrey, as his spouse, expressly acknowledged that they each had received the HUD disclosure statement a day prior to closing and that all requirements set forth in section 50(a)(6), Article XVI of the Texas Constitution had been satisfied.  (*See* Dkt. No. 27, Ex. A, Ocwen Aff. at ¶ 6; Ex. A.5; *see also* Ex. C.).  More specifically, in accordance with the Home Equity Affidavit executed by the plaintiffs on July 12, 2005, B. Parffrey and A. Parffrey represented and warranted, under oath, before a notary, the following:

The Note and Security Instrument have not been signed before one business day

after the date that the owner of the Property received a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing or a bona fide emergency or other good cause exists and the owner of the Property hereby consents to the Lender providing or modifying such final itemized disclosure on the date of the signing of the Note and Security Instrument and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

(*Id.*).

By way of their signatures, the plaintiffs also acknowledged that their execution of the Home Equity Affidavit induced the lender and its assigns to make the extension of credit, with the understanding that the lender and its assigns could rely on such signatures. (*Id.*). In light of the HUD disclosure statement executed by B. Parffrey on July 11, 2005, coupled with the Home Equity Affidavit executed contemporaneously with the plaintiffs' closing, the plaintiffs are estopped from now claiming that they failed to receive the required disclosures one business day prior to closing. *See Sierra v. Ocwen Loan Servicing, LLC*, No. H-10-4984, 2012 WL 527940, *3 (S.D. Tex. Feb. 16, 2012). Since the plaintiffs have failed to raise a genuine issue of material fact concerning whether the required disclosure was given at least one business day prior to closing, the Court determines that the constitutional requirement mandated by § 50(a)(6)(M)(ii) was satisfied. Further, even assuming the validity of the plaintiffs' breach of contract claim, such a claim is barred by the applicable four-year statute of limitations, which expired on July 12, 2009—four years after the July 12, 2005 closing date.[1] *See Alexander v. Wells Fargo Bank*, *N.A.*, 867 F.3d 593, 603 (5th Cir. 2017). Accordingly, the defendants are entitled to a summary judgment on the plaintiffs' breach of contract claim.

---

[1] To the extent that the plaintiffs' attempt to allege additional constitutional violations by way of their general pleadings, the Court determines that such claims are barred by the *res judicata* doctrine. *See Warren v. Mortg. Elec. Registration Sys., Inc.*, 616 F. App'x 735, 738 (5th Cir. 2015).

### B.      The Plaintiffs' Claim to Quiet Title

Next, the plaintiffs argue that the defendants' real property lien and power of sale are void because they failed to bring suit for foreclosure within four years after the Note was accelerated. (*See* Dkt. No. 1, Ex. A-3, ¶¶ 29 – 32).  As such, the plaintiffs seek to quiet title in their favor.  A suit to clear or quiet title "'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Morlock, L.L.C.  v. JP Morgan Chase Bank, N.A.*, No. 12-20623, 2013 WL 2422778, at *1 (5th Cir. June 4, 2013) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. App.-Waco 1980, writ ref'd. n.r.e.) (quoting *Thomson v. Locke*, 66 Tex. 383, 1 S.W. 112, 115 (Tex. 1886)).  Such an action "relies on the invalidity of the defendant's claim to the property."  *Morlock*, 2013 WL 2422778, at *1 (internal citation omitted).  In order to prevail on a claim to quiet title, the plaintiffs are required to demonstrate that:  (1) they have an interest in the property; (2) title to the property is impaired by the defendants' claim; and (3) the defendants' claim, while facially valid, is unenforceable.  *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp.2d 747, 766 (N.D. Tex. 2012).  As a consequence, "the plaintiff[s] ha[ve] the burden of supplying the proof necessary to establish [their] superior equity and right to relief."  *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.-Houston [1st Dist.] 2012, pet. denied) (quoting *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.-Houston [1st Dist.] 2009, pet. denied).

Here, the plaintiffs contend that the lien held by the defendants is invalid because the defendants failed to initiate foreclosure within four years after the date of acceleration of the Note.  Under Texas law, "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code § 16.035(a).  After the four-year period expires, "the

real property lien and [the] power of sale to enforce the real property lien become void." Tex. Civ. Prac. & Rem. Code § 16.035(d). A cause of action under § 16.035 accrues "when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Acceleration requires two "clear and unequivocal" acts: (1) notice of intent to accelerate; and (2) notice of acceleration. *See Murphy v. HSBC Bank USA*, 95 F. Supp. 3d 1025, 1030 (S.D. Tex. 2015) (internal citations omitted).

Even after a note holder has accelerated a note after default, however, acceleration can be abandoned if the note holder resumes accepting payments without employing any of the remedies available to it upon maturity. *See Wolf*, 44 S.W.3d at 566 - 67. In instances where the debtor does not object, a note holder may also abandon or rescind its acceleration by voluntarily dismissing its claims against the debtor. *See DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Trust Co., N.A.*, 958 F. Supp.2d 738, 749 - 750 (W. D. Tex. 2013) (holding that unilateral notices of rescission were sufficient to abandon acceleration); *In re Rosas*, 520 B.R. 534, 540 (W.D. Tex. 2014) ("The parties can establish abandonment through an agreement or their actions alone, including unilateral actions in certain circumstances.") (internal citations omitted). "Abandonment of acceleration has the effect of restoring the contract to its original condition," thereby "restoring the note's original maturity date" for purposes of accrual. *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (internal citations omitted).

Neither party disputes that the plaintiffs are in default under the Note, and have been since April 2006. It is also undisputed that the loan was accelerated on September 7, 2011. Rather, the parties dispute whether the acceleration was unilaterally abandoned by a subsequent notice of default. The evidence in the record confirms that a subsequent notice of default,

requesting less than the full balance due under the Note, was sent to the plaintiffs on April 7, 2014, by notice given pursuant to Texas law, along with a new notice of acceleration sent to them on May 12, 2014. (*See* Dkt. No. 27, Ex. A, Ocwen Aff. at ¶ 11; Ex. A.7.). On March 27, 2018, the defendants sent the plaintiffs a Notice of Rescission of Acceleration of Loan Maturity. (*Id.*, Ocwen Aff. at ¶ 13; Ex. A.8.). Nevertheless, the plaintiffs maintain that these subsequent notices are insufficient to establish that the defendants unequivocally rescinded acceleration. (*See* Dkt. No. 26 at 4.). This Court does not agree, as the Fifth Circuit has held that:

> a lender may unilaterally abandon acceleration of a note, thereby restoring the note to its original condition . . . by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms.

*Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015); *see also DeFranceschi v. Seterus, Inc.*, No. 17-11151, 2018 WL 1989974, *2 (5th Cir. Apr. 26, 2018) (reasoning that the note holder "unequivocally manifested an intent to abandon the previous acceleration" by way of its subsequent notice of default provided to the debtor).

Indeed, the new subsequent notice unequivocally manifested the defendants' intentions to abandon the previous acceleration and provided the plaintiffs with an opportunity to avoid foreclosure if they cured the amount in arrears. *See* Dkt. No. 27, Ex. A, Ocwen Aff. at ¶ 11; Ex. A.7.). "As a result, the statute of limitations period under § 16.035(a) ceased to run at that point and a new limitations period did not begin to accrue until" the plaintiffs defaulted again and the defendants exercised their right to accelerate. *Boren*, 807 F.3d at 106. The fact that the plaintiffs now contend, without tendering a modicum of support, that the April 2014 notice of default is insufficient to serve as notice of abandonment because they failed to receive it is of no moment because Texas law does not require actual receipt. *See Martins v. BAC Home Loans Servicing*,

722 F.3d 249, 256 (5th Cir. 2013). Therefore, this Court concludes that the plaintiffs have failed to raise a genuine issue of material fact concerning whether acceleration occurred more than four years ago so as to render the defendants' lien and power of sale void. Accordingly, the defendants are entitled to a summary judgment on the plaintiffs' claim to quiet title due to the expiration of the four-year limitations period.

## C. The Plaintiffs' Claims for Declaratory and Injunctive Relief

The plaintiffs also seek declaratory and injunctive relief restraining the defendants from interfering with their rights to quiet enjoyment and use of the Property. (*See* Dkt. No. 1, Ex. A.3 at 8 – 10.). Both declaratory and injunctive relief, however, are forms of relief grounded on underlying claims. *See Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n. 3 (5th Cir. 1996) (reasoning that declaratory relief is a procedural device and does not establish any substantive rights or causes of action); *Cook v. Wells Fargo Bank, N.A.*, No. 3:10–CV–0592–D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) ("Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action."). Because this Court has determined that the plaintiffs' substantive claims for relief fail, the plaintiffs' claims for declaratory and injunctive relief also fail. As such, the defendants are entitled to judgment as a matter of law on these claims.

## D. The Plaintiffs' Claim for Attorney's Fees

Lastly, the plaintiffs allege that they are entitled to recover reasonable attorneys' fees pursuant to § 37.009 of the Texas Civil Practice & Remedies Code. The defendants move for judgment as a matter of law on the plaintiffs' attorney's fee claim. Tex. Civ. Prac. & Rem. Code § 37.009 expressly provides that a "court may award costs and reasonable and necessary attorney's fees as are equitable and just," for any action brought under the Texas Declaratory

Judgment Act. Tex. Civ. Prac. & Rem. Code § 37.009. Because the plaintiffs' request for declaratory and injunctive relief fail and the Fifth Circuit has held that under *Erie* principles the Texas Declaratory Judgment Act is procedural and does not apply in federal proceedings, the plaintiffs are not entitled to recover attorney's fees. *See Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 413 (5th Cir. 2006). Accordingly, the defendants are entitled to judgment as a matter of law on the plaintiffs' attorney's fee claim.

## V. CONCLUSION

Based on the foregoing analysis and discussion, the defendants' motion for summary judgment is **GRANTED**; the plaintiffs' motion for summary judgment is **DENIED**.

It is so **ORDERED**.

SIGNED and ENTERED this 28th day of September, 2018.

Kenneth M. Hoyt
United States District Judge